**Scott Anthony SARTAIN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–06–037–CR.**

Court of Appeals of Texas, Fort Worth.

June 7, 2007.

Lisa Mullen, Fort Worth, for Appellant.

Tim Curry, Criminal District Atty., Charles M. Mallin, Michael R. Casillas, Nicole R. Nichols, & Tasha Simpson, Asst. Criminal District Attys., Fort Worth, for The State.

Panel A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

Appellant Scott Anthony Sartain appeals from his conviction and 120–day sentence for resisting an arrest or search. In his sole point, appellant argues that the evidence was legally and factually insufficient to establish that the arresting officer was Officer "J. Bell," to establish that he struck Officer Bell with his hand, to establish that he used force, and to establish that Officer Bell was attempting to arrest or search him. We affirm.

### II. Background Facts

On September 27, 2005, Arlington Police Officer J. Cleat Bell was patrolling an area in east Arlington that was known for game rooms and criminal activity, including narcotics offenses, car thefts, and violent crimes. At approximately 1:00 a.m., Officer Bell, acting on information from an informant regarding a potential drug dealer, drove his police cruiser to a game room parking lot to look for a specific vehicle. During this investigation, Officer Bell noticed appellant sitting in a car. Because of his training and experience and the fact that appellant was sitting in a car without air conditioning on a hot night in an area known for narcotics dealing, Officer Bell suspected that drug activity was occurring.[1] In addition to these suspicions, Officer Bell also decided to approach appellant to ensure he was not passed out or intoxicated.

After parking his police car, Officer Bell walked up to the driver's side of appellant's car and saw appellant talking with two females parked in the next space. Officer Bell asked appellant why he was waiting in the parking lot, and appellant responded that he was waiting for his friend "Brian" to complete his shift as a manager at one of the game rooms. Officer Bell testified that he did not know Brian personally, but knew of Brian be-

---

1. Officer Bell was not looking for appellant or for appellant's vehicle when he first arrived at the lot.

cause the police suspected him of dealing drugs in the game room he allegedly managed.

Because the parking lot was in a location known for narcotics dealing, there were three people (appellant and the two females) in the lot, and the lot was not well-lighted, Officer Bell decided to conduct a pat-down search of appellant for weapons.[2] Officer Bell asked appellant to step out of the car, walk to the trunk, place the objects in his hands on the trunk, and then place his hands on the trunk. Appellant complied with every instruction except one—he retained a white envelope in his left hand and put it "back behind his leg trying to hide it" from the officer.[3]

Officer Bell again instructed appellant to place his left hand on the trunk. When appellant did not comply, Officer Bell grabbed his left hand. In response, appellant turned, looked over his left shoulder, and ran. Officer Bell immediately chased appellant and caught him thirty to forty yards away. When Officer Bell reached out to grab the back of appellant's shirt, appellant fell forward into a parked vehicle. Officer Bell stated that appellant tensed his muscles up, struggled, and tried to pull away. While Officer Bell tried to get appellant "into the position to do a straight arm bar takedown," two other police officers arrived. Appellant's struggling caused all three officers to fall to the ground in a "big dog pile." Officer Bell later testified that, during the struggle, appellant struck him numerous times. Specifically, appellant's "arms were flailing around, his legs were kicking." Officer Matt Henderson and Officer Bell's testimonies at trial differed regarding whether appellant was face-down on the ground,

laying on his hands, or sitting on top of Officer Bell. However, both officers agreed that appellant "put up a very good fight," did not want to be arrested, and required multiple officers to complete the arrest.

A jury found appellant guilty of resisting an arrest or search, and he appeals from his conviction and 120–day sentence.

## III. Appellant's Four Sub–Points

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958

---

**2.** Officer Bell conceded that he did not have probable cause or reasonable suspicion that would allow him to arrest appellant or ask appellant to exit the car.

**3.** The officers later determined that appellant was holding a folded up pay stub with methamphetamine in it.

(2000). We must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim.App.2000).

 The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Bowden v. State,* 166 S.W.3d 466, 470 (Tex.App.-Fort Worth 2005, pet. ref'd). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State,* 46 S.W.3d 243, 253 (Tex.Crim. App.2001); *Malik,* 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry,* 30 S.W.3d at 404.

 When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State,* 204 S.W.3d 404, 414 (Tex.Crim.App. 2006); *Drichas v. State,* 175 S.W.3d 795, 799 (Tex.Crim.App.2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson,* 204 S.W.3d at 414–15, 417; *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim. App.2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson,* 204 S.W.3d at 417.

 In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson,* 23 S.W.3d at 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex. Crim.App.1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson,* 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9.

 An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State,* 66 S.W.3d 283, 287 (Tex.Crim.App.2001); *Johnson,* 23 S.W.3d at 7.

## B. Applicable Law

A person resists a search or arrest if he intentionally obstructs a person he knows

is a peace officer from effecting an arrest or search by using force against that officer. TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003). It is no defense to prosecution that the arrest or search was unlawful. *Id.* § 38.03(b); *see White v. State,* 601 S.W.2d 364, 366 (Tex.Crim.App. [Panel Op.] 1980).

## C. Appellant's First Sub–Point

In his first sub-point, appellant argues that the evidence was legally and factually insufficient to establish that the arresting officer was Officer "J. Bell" as indicated in the indictment and the jury charge.[4] Appellant notes that there "is no evidence anywhere in the record that the officer's name was J. Bell," and instead, Officer Cleat Bell was the arresting officer who was allegedly struck and ultimately testified at appellant's trial.

We agree with appellant that Officer Bell did indeed identify himself as "Officer Cleat Bell with the Arlington Police Department." Further, Officer Bell never testified that "J" was an initial to one of his names or that his given first name began with a "J." In fact, no testimony reflected that Officer Bell was anyone other than Officer *Cleat* Bell. Appellant argues that this variance between the indictment and the proof at trial causes the evidence showing that he assaulted Officer "J." Bell to be legally and factually insufficient. We disagree.

As a general rule, a variance between the indictment and evidence at trial is fatal to a conviction. *Stevens v. State,* 891 S.W.2d 649, 650 (Tex.Crim.App. 1995). This is because due process guarantees the defendant notice of the charges against him. *Id.* Due process is violated when an indictment alleges one offense, but the State proves another. *Id.*

However, not every variance between the evidence at trial and the indictment is fatal to the sufficiency of the evidence. *Id.* Only a material variance is fatal. *Id.* The object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for a variance to be material, it must mislead the party to his prejudice. *Id.; see Gollihar v. State,* 46 S.W.3d 243, 244–45 (Tex.Crim. App.2001) (holding that a hypothetically correct jury charge, as used to measure sufficiency of the evidence to support conviction, need not incorporate allegations that give rise to immaterial variances between indictment and proof).

Variance between the victim's name in an indictment and proof at trial may be *immaterial* if the defendant was not surprised by the proof at trial. *See Fuller v. State,* 73 S.W.3d 250, 254 (Tex. Crim.App.2002) (holding that the prosecution's failure to prove the victim's name exactly as alleged in the indictment does not make the evidence insufficient under *Gollihar* ). In *Fuller,* the defendant was accused of injuring "Olen M. Fuller," an

---

4. The information alleged that appellant did,

> then and there intentionally prevent or obstruct J. Bell, a person he knew to be a peace officer, from effecting an arrest or search of said defendant, by using force against said peace officer, to wit: by striking J. Bell with his hand.

The jury charge required the jury to find the following facts beyond a reasonable doubt before conviction:

> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the Defendant, SCOTT ANTHONY SARTAIN ... did then and there intentionally prevent or obstruct J. Bell, a person he knew to be a peace officer, from effecting an arrest, or search, of SCOTT ANTHONY SARTAIN, by using force against said peace officer, to wit: by striking J. Bell with his hand, you will find the Defendant guilty as charged.

elderly individual. *Id.* Evidence at trial only reflected the victim's name as "Mr. Fuller" and "Buddy," however. *Id.* The court held that the variance between the indictment and the proof at trial was immaterial because there was no indication in the record that appellant did not know whom he was accused of injuring. *See id.; Gollihar*, 46 S.W.3d at 257. Further, the variance did not subject appellant to another prosecution for the same offense. *See Fuller*, 73 S.W.3d at 254; *Gollihar*, 46 S.W.3d at 257.

Here, there was no evidence at trial showing that appellant did not know who had accused him of resisting arrest or search. Further, *an* Officer Bell testified against appellant, the court reporter typed in Officer Bell's name as "Officer J. Cleat Bell," appellant's attorney subpoenaed records from "Officer Cleat Bell," and the prosecutor referred to "Officer J. Bell" without objection throughout the trial.[5] When considering all of these factors, appellant was not surprised and claimed no surprise by the variance between the indictment and the proof at trial. *See Fuller*, 73 S.W.3d at 254; *Gollihar*, 46 S.W.3d at 257.

Further, for appellant to succeed on his legal insufficiency claim, the name of the victim must be a substantive element of the criminal offense as defined by state law. *Fuller*, 73 S.W.3d at 252. In *Fuller*, the Court of Criminal Appeals held that the victim's name was not a substantive element of the crime because the penal code defined that offense as " 'injury to an elderly individual,' " not " 'injury to an elderly individual named Olen M. Fuller.' " *Id.* at 253. The same logic applies here.

Appellant was charged under section 38.03(a) of the penal code, which provides that a person resists arrest if he intentionally obstructs a person he knows is a peace officer from effecting an arrest by using force against that officer. TEX. PENAL CODE ANN. § 38.03(a). The penal code does not require the identification of the police officer as a substantive element of the crime of resisting a search or arrest; the State must only prove that appellant obstructed a person he knows to be a police officer. *See Fuller*, 73 S.W.3d at 253. Here, the two other officers also testified that while they all were trying to arrest appellant, appellant struck "Officer Bell," a peace officer.

Because variances of this type are not material given the present facts, and only material variances render evidence insufficient under *Gollihar*, we do not agree with appellant that the State failed to show that appellant struck *an* Officer Bell. *See id.; Gollihar*, 46 S.W.3d at 257. Accordingly, we overrule appellant's first sub-point.

### D. Appellant's Second Sub–Point

▆ In his second sub-point, appellant argues that the evidence was legally and factually insufficient to establish that he used force by "striking J. Bell with his *hand*," as alleged in the information and charged in the jury charge. (Emphasis added.) Appellant notes that the testimony at trial did not establish that he struck Officer Bell with his *hand*, but instead only showed that he either flailed his arms and feet around or laid on his hands. According to appellant, this variance between the proof at trial and the indictment is fatal. Again, we disagree.

---

5. The dissent theorizes that we may be "making a case for the civil concept of trial by consent" because we note that appellant never objected to the prosecutor's use of the name "Officer J. Bell." On the contrary, we point this out to support the conclusion that appellant had notice of his charged offense because he was informed that he struck a police officer with the last name "Bell" while the officer was attempting to arrest him.

When the State asked Officer Bell if he had been struck by appellant's hands or feet during the confrontation, Officer Bell responded, "Yes. I got struck numerous times from the time I caught up to him to the time he was handcuffed. His arms were flailing around, his legs were kicking. So I got struck numerous times."

Officer Matt Henderson testified that appellant was on top of and "pushing up against" Officer Bell at various times. Further, Officer Henderson and another officer had to get involved in the arrest to gain control of appellant and stop him from flailing his arms. Officer Henderson testified that police officers usually try to gain control over a suspect by grabbing their hands, and after a struggle, he was eventually able to place a cuff on appellant's "left arm or left wrist."

Officer Bell also testified that appellant was "face down" and "laying on both of his hands" during the entire encounter. Appellant contends that because Officer Bell's testimony regarding appellant's hand placement differed from his earlier testimony and from Officer Henderson's testimony, the variance rendered the evidence of him striking Officer Bell with his hand insufficient. However, the jurors are responsible for resolving conflicting testimonies. See Johnson, 23 S.W.3d at 8. While Officer Bell's testimony regarding where appellant's hands were during the arrest was inconsistent, the jurors could have concluded that appellant's hands were not pinned to the ground during the entire struggle or during the moments where he flailed his arms. The jurors could have also concluded that appellant's hands were the primary danger to Officer Bell, as Officer Henderson focused his own efforts on trying to cuff appellant's wrists. Further, because appellant was sitting on top of Officer Bell at some point during the confrontation, the jurors could have con-cluded that he used his hands to push up against the officer. Accordingly, we over-rule appellant's second sub-point.

### E. Appellant's Third Sub–Point

■ In his third sub-point, appellant argues that the evidence was legally and factually insufficient to establish that he *used force against* Officer Bell, as alleged in the information and charged to the jury. Appellant notes that the testimony at trial did not show that he used force against Officer Bell, but only that he attempted to get away from the officers by pulling and pushing against them and by flailing his arms. According to appellant, because none of this force was directed at the officers, his conduct constituted only "passive resistance" which is insufficient to sustain a conviction for resisting arrest under 38.03(a) of the penal code. See TEX. PENAL CODE ANN. § 38.03(a). We disagree.

■ A person can forcefully resist an arrest without successfully making physical contact with the officer. See *Haliburton v. State*, 80 S.W.3d 309, 312–13 (Tex.App.-Fort Worth 2002, no pet.) (holding that a defendant's act of "kicking at" an officer constituted force even though the kick did not connect). Further, one who runs away or makes an effort to shake off an officer's detaining grip may be guilty of evading arrest under section 38.04, and not responsible under section 38.03, but only if there has been a non-forceful evasion of arrest. TEX. PENAL CODE ANN. §§ 38.03, 38.04; *Bryant v. State*, 923 S.W.2d 199, 208 (Tex.App.-Waco 1996), *pet. ref'd*, 940 S.W.2d 663 (Tex.Crim. App.1997). However, one who uses force to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03. See *Bryant*, 923 S.W.2d at 208; *see also Torres v. State*, 103 S.W.3d 623, 627 (Tex.App.-San Antonio 2003, no pet.) (hold-

ing that a defendant forcefully resisted arrest by pulling his arms to avoid being handcuffed and then by hitting the officer's arm away). Further, when a defendant thrashes his arms and legs and is combative towards an officer, he forcefully resists arrest. *See Boughton v. State,* 631 S.W.2d 818, 820 (Tex.App.-Fort Worth 1982, no pet.).

Here, while the officers agreed that appellant's primary motivation seemed to be to escape, they also agreed that appellant not only flailed his arms during the confrontation, but also struck Officer Bell numerous times and pushed up against him. Further, appellant's resistance was so strong that it required three police officers to restrain him. When the officers first attempted to restrain appellant, everyone fell in a "big dog pile" because of the struggle. Amidst the struggle, Officer Henderson went to check on the two women. When he returned to the confrontation, however, he had to continue to assist the other officers because they had been unable to get appellant under control.

The evidence here establishes that appellant did more than engage in passive resistance; he flailed his arms at Officer Bell while attempting to escape. Such actions constitute force against the arresting officer. *See Haliburton,* 80 S.W.3d at 312–13. Accordingly, we overrule appellant's third sub-point.

### F. Appellant's Fourth Sub–Point

■ In his fourth sub-point, appellant argues that the evidence was legally and factually insufficient to establish that he intentionally or knowingly resisted an arrest or search because Officer Bell was not arresting or formally searching him and had no legal reason to do so. In his brief, appellant first questions the legality of the pat-down search. However, it is no defense to prosecution under section 38.03(a)

that the arrest or search was unlawful. *See* TEX. PENAL CODE ANN. § 38.03(b); *White,* 601 S.W.2d at 366; *Solis v. State,* 704 S.W.2d 883, 885 (Tex.App.-Corpus Christi 1986, pet. ref'd) (holding that once the defendant used force against the officer, the legality of the arrest became immaterial because of the resistance).

Appellant next asserts that he did not intentionally or knowingly resist an arrest or search because Officer Bell was only conducting a pat-down for weapons when appellant attempted to flee. Appellant further reasons that, under section 38.03(a), any resistance to a search must be to a "traditional" search and not a search incident to an investigative detention or stop. Appellant cites no authority in support of this assertion.

The Eastland Court of Appeals has held that a police officer was "effecting a search" when the defendant resisted a pat-down search of his person incident to an investigatory detention. *Jackson v. State,* 993 S.W.2d 162, 163–65 (Tex.App.-Eastland 1999, no pet.). The court reasoned that, as such, the accused was culpable of the offense of resisting arrest. *Id.*

We agree with the court's analysis in *Jackson. See id.* We can perceive no reason why a pat-down or frisk should have a lesser consequence to one who resists such a search. Appellant does not contend in his brief that the evidence here fails to demonstrate that resistance to a pat-down search occurred. Clearly, under any evidentiary standard, appellant used force to obstruct a search. Accordingly, we overrule appellant's forth sub-point.

### IV. Conclusion

Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support appellant's conviction for resisting arrest or

search. We overrule appellant's sole point and affirm the trial court's judgment.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I must respectfully dissent from the majority's thoughtful opinion because I cannot agree that the State is not bound by its indictment or information in determining the sufficiency of the evidence. The majority holds that the evidence is sufficient to prove that Cleat Bell and J. Bell are the same person because the State referred to the officer as J. Bell, even though the witness/complainant testified that his name was Cleat Bell.

"Everything should be stated in an indictment which is necessary to be proved."[1] The rules with respect to allegations in an indictment and the certainty required apply also to an information.[2] It is well-settled that the purpose of a charging instrument is to give the defendant notice of the specific offense with which he is charged and to enable the court, upon conviction, to pronounce the proper judgment, and to enable the accused to plead the judgment that may be given upon it in bar of any further prosecution for the same offense.[3] A conviction can never rest upon conduct which is not a criminal offense, or in whole or in part upon conduct not alleged in an indictment or information.[4]

An essential element of the offense of resisting an arrest or search is that the actor "intentionally prevents or obstructs a person he knows is a peace officer ... from effecting an arrest, search, or transportation of the actor ... by using force against the peace officer."[5] An essential part of the investigation and preparation for trial, then, is learning whether the person named in the information is indeed a peace officer or whether it would be readily apparent that the complainant was a police officer.

Unlike the situation in *Fuller v. State*,[6] there is no evidence that Officer J. Bell or Officer Cleat Bell is Appellant's father. There is no evidence that the two or three men are related in any way, nor is there evidence that they knew each other before the offense date. The court reporter recorded the officer's name as J. Cleat Bell, but we have no idea why, and the reporter's record was not evidence considered by the jury in reaching its verdict. The prosecutor may have called J. Bell to the stand, but the record is silent as to whether the bailiff sought out the witness or whether some other person did. The record also does not tell us whether the bailiff or some other person simply called out for "Bell." The rule had been invoked.

It is well-established law that what the lawyers say is not evidence. No one testified that Cleat Bell and J. Bell were the same person. I also note that Bell is a well-known name in law enforcement in

1. Tex.Code Crim. Proc. Ann. art. 21.03 (Vernon 1989).

2. *Id.* art. 21.23.

3. *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim.App.1990); *see* Tex.Code Crim. Proc. Ann. arts. 21.04, 21.11.

4. *Lawton v. State*, 913 S.W.2d 542, 551 (Tex. Crim.App.1995), *cert. denied*, 519 U.S. 826,

117 S.Ct. 88, 136 L.Ed.2d 44 (1996), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

5. Tex. Penal Code Ann. § 38.03(a) (Vernon 2003).

6. 73 S.W.3d 250, 251 (Tex.Crim.App.2002).

this area. Officer John Bell is the name of an Arlington police officer who was shot after a bank robbery.[7] It is also the name of an Arlington homicide detective (who may or may not be the same officer who was shot several years ago).[8] Another Officer Bell was named in an opinion as a quick-thinking Hurst police officer.[9] Additionally, Bell is not an unusual name. Many people named Bell are not connected with law enforcement.

If, as the majority argues, the name of the person who the State alleges is a peace officer is of no import, then why name anyone at all? The majority suggests that we should hold the evidence sufficient if the State got close to proving its case because it got the last name right. Is the State required only to prove that someone named Bell was a peace officer and that Appellant struck him? The State proved that Cleat Bell was a peace officer. The State did not prove that J. Bell was a peace officer. If it is sufficient to plead, as the majority suggests, that Appellant struck "some police officer," then does it matter whether the proof shows one of his names is Bell or whether it is Bob Smith

or Sally Clark? The sufficiency of the evidence is measured against the hypothetically correct jury charge as measured against the hypothetically correct indictment or information.[10] Both the jury charge and the information refer only to J. Bell.

Contrary to the majority's argument, a defendant does not have to show surprise when the State fails to prove its case. The defendant merely argues that the State failed to sustained the burden of proof that the State assumed. The defendant is not required to do anything to preserve a sufficiency claim in a criminal case.[11]

Because no evidence in the record reflects that J. Bell and Cleat Bell are two names for the same person, the information naming J. Bell as the complainant does not protect Appellant from again being placed in jeopardy of this same offense should Cleat Bell be named as the complainant in a later information.[12] Nor is there any evidence that J. Bell is a police officer.

The majority in the case now before this court appears to shift the burden of proof

---

**7.** *Gilbert v. State*, 781 S.W.2d 296, 297 (Tex. App.-Fort Worth 1988) ("He [Kenneth Wayne Dryden] shot Arlington Police Officer John Bell after a bank robbery in Arlington two and a half years ago."), *aff'd*, 808 S.W.2d 467 (Tex.Crim.App.1991).

**8.** *See Henstenberg v. State*, No. 02–05–00370–CR, 2007 WL 1441034 at *1 (Tex.App.-Fort Worth May 17, 2007, no pet. h.).

**9.** *Carruth v. State*, 762 S.W.2d 364, 366 (Tex. App.-Fort Worth 1988, no pet.) ("Officer Bell, who was also an off-duty Hurst police officer, pursued Goodspeed and arrested her.").

**10.** *See Fuller*, 73 S.W.3d at 260 (Womack, J., concurring) ("The court of appeals found it unclear whether *Malik* would use a hypothetically correct jury charge that was based on a hypothetically correct indictment or one that was based on the actual indictment."); *Ro-*

*sales v. State*, 4 S.W.3d 228, 235 n. 3 (Tex. Crim.App.1999) (Myers, J., concurring) ("By extending *Malik* to the context presented in this case, the majority appears to have created a 'hypothetically correct indictment' doctrine."), *cert. denied*, 531 U.S. 1016, 121 S.Ct. 576, 148 L.Ed.2d 493 (2000).

**11.** *Moff v. State*, 131 S.W.3d 485, 488–89 (Tex.Crim.App.2004).

**12.** *Gollihar v. State*, 46 S.W.3d 243, 258 (Tex. Crim.App.2001) (citing *United States v. Apodaca*, 843 F.2d 421, 430 n. 3 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988), for the proposition that the "entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution").

from the State to Appellant, suggesting that Appellant failed to prove below that J. Bell and Cleat Bell were not the same person and failed to object when the prosecutor spoke of J. Bell. Or, perhaps, the majority is making a case for the civil concept of trial by consent. That is, because Appellant did not object when J. Bell became Cleat Bell, perhaps the majority contends that Appellant implicitly consented to a trial amendment of the information. Criminal law does not recognize trial by consent except when a defendant affirmatively waives indictment and consents to trial on information or when a defendant agrees to amendment of the charging information during trial.[13] Such agreement must be clear and unambiguous and not the result of a failure to object.[14] Consequently, Appellant could not have implicitly consented.

No evidence in the record shows that J. Bell and Cleat Bell are the same person or that J. Bell is a police officer; I therefore believe that we must hold that the evidence is legally insufficient to support Appellant's conviction. Because the majority does not, I must respectfully dissent.

---

13. *See Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Crim.App. [Panel Op.] 1980) (orig. proceeding) (stating that "it is well settled that a valid indictment, or information if indictment is waived, is essential to the district court's jurisdiction in a criminal case"); *Weatherby v. State*, 61 S.W.3d 733, 739 (Tex.App.-Fort Worth 2001, pet. ref'd) (Dauphinot, J., concurring) ("There is no such thing as trial by consent in a criminal case.").

14. *See Riney v. State*, 28 S.W.3d 561, 565–66 (Tex.Crim.App.2000) ("If approved, the amended photocopy of the original indictment need only be incorporated into the record under the direction of the court, pursuant to Article 28.11, with the knowledge and affirmative assent of the defense.").