COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-435-CR

 

 

AMBER NICOLE CLEMENT                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction

Appellant Amber Nicole
Clement appeals her conviction for the offense of resisting arrest or
transport.  In issues one through four,
appellant argues that the evidence is legally and factually insufficient to
support her conviction. In issue five, appellant asserts that the jury did not
render a unanimous verdict because of the erroneous disjunctive submission of
two different offenses or theories of committing the crime in the charge.  We affirm.








Background Facts

On December 13, 2005, at
about 3:00 p.m., Carrollton Police Officer Robert Hay saw the
twenty-one-year-old appellant striking her boyfriend, Kyle Compagna, in the
parking lot of a shopping center in the 1000 block of East Frankford Road in
Denton County.  Officer Hay saw that
Compagna put his hands up in a defensive motion as he tried to walk away from
appellant, but she followed him.  Officer
Hay pulled into the parking lot, turned on the lights on his marked patrol car,
and called for backup.  He then tried to
separate appellant and Compagna.  Officer
Hay testified that while appellant continued to strike Compagna, Officer Hay
walked up behind her and grabbed her arms. He also testified that appellant
pulled away from him and resisted his directions.  Officer Hay was wearing his police
uniform.  

Carrollton Police Officer
Glenn Michna responded to Officer Hay=s call and arrived in the parking lot about thirty seconds after
Officer Hay called for backup.  When
Officer Michna arrived, he saw Officer Hay following appellant, who was chasing
a male.  He then saw Officer Hay place
appellant in handcuffs.








After handcuffing appellant,
Officer Hay placed her on the curb and went to speak to Compagna.  While Officer Hay conducted his
investigation, appellant slipped her left hand out of the handcuffs.  Officer Hay testified that appellant wore a
thick sweater and because of her resistance to being handcuffed, he placed the
handcuffs over the sweater.  The sweater
came out from beneath the handcuffs, which gave appellant enough room for her
left hand to come out.  When Officer Hay
saw that appellant=s left hand
was free, he and Officer Michna went to recuff her.  Officer Michna corroborated Officer Hay=s testimony about the handcuffs.








After the officers recuffed
appellant, they tried to put her in the back of Officer Hay=s police car.  Officer Hay
testified that appellant did not cooperate and that he had difficulty getting
her to the car because she moved in the opposite direction from the one
directed by the officers and continued to resist and struggle.  He also testified that appellant pushed
against him and Officer Michna the entire time and that from the beginning Ait was a constant battle.@  Officer Michna testified that
he heard Officer Hay tell appellant that she was going to jail.  When Officers Hay and Michna finally got
appellant into the car, she began to kick, scream, and bang her head against
the windows of the car. While Officer Hay finished his investigation, appellant
continued to scream and cry hysterically in the car.  Appellant repeatedly banged her head against
the side window and on the Plexiglass that separated the front seat from the
back seat.  Appellant also lay down across
the seat and kicked the side windows. After about fifteen minutes, Officer Hay
got into his car to take appellant to the police station, but he drove only
about thirty yards before he had to stop because appellant continued to kick
the side windows in the police car; appellant kicked the windows so hard that
they came out of their frames.  He and
Officer Michna opened the door to restrain appellant=s feet, and she kicked at Officer Hay=s face, although her foot did not make contact.  Appellant continued to kick, convulse, and
scream as the officers placed her feet in restraints.  Appellant also continued to bang her head
against the Plexiglass.

After securing appellant=s feet in restraints, Officer Hay continued to the police station,
which was about five to ten minutes away. 
Officer Hay pulled into the garage area of the jail, and several
officers came to help get appellant out of the car.  An officer asked appellant to stop fighting
and to calm down, but she continued to cry hysterically as they took her
inside. 

The State charged appellant
with the offense of resisting arrest, search, or transport.  On November 16, 2006, a jury found appellant
guilty of that offense.  The trial court
sentenced appellant to three hundred days= confinement, suspended for twenty-four months. 

Sufficiency of the Evidence

In appellant=s issues one through four, she argues that the evidence was legally
and factually insufficient to support her conviction for resisting arrest or
transport.








Standard of review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16-17 (Tex. Crim. App. 2007). 
We must presume that the fact-finder resolved any conflicting inferences
in favor of the prosecution and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.

The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.  The law as
authorized by the indictment means the statutory elements of the charged
offense as modified by the charging instrument. 
See Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or because
we disagree with the jury=s resolution
of a conflict in the evidence.  Id.  We may not simply substitute our judgment for
the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
Unless the record clearly reveals that a different result is
appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

Applicable law

Although appellant separates
her sufficiency issues into challenges to a conviction for resisting arrest and
a conviction for resisting transportation, the judgment reflects that appellant
was convicted of a single offense, resisting arrest or transport.  See Hartis v. State, 183 S.W.3d 793,
803 (Tex. App.CHouston
[14th Dist.] 2005, no pet.) (holding that section 38.03 encompasses various
ways of committing the single offense of resisting arrest, search or transport,
although the appellant separated his sufficiency challenges into two issues:
resisting arrest and resisting transport). 
To obtain a conviction in this case, the State was required to prove
that appellant intentionally prevented or obstructed a person she knew was a
peace officer from effecting an arrest, search, or transportation of appellant
by using force against the peace officer. 
Tex. Penal Code Ann. ' 38.03(a) (Vernon 2003).








A person can forcefully resist
an arrest without successfully making physical contact with the officer.  See Sartain v. State, 228 S.W.3d 416,
424 (Tex. App.CFort Worth
2007, pet. ref=d); see
also Haliburton v. State, 80 S.W.3d 309, 312-13 (Tex. App.CFort Worth 2002, no pet.) (holding that a defendant=s act of Akicking at@ an officer constituted force even though the kick did not
connect).  One who uses force to shake
off an officer=s detaining
grip, whether by pushing or pulling, may be guilty of resisting arrest under
section 38.03.  Sartain, 228
S.W.3d at 424.  Further, when a defendant
thrashes his arms and legs and is combative towards an officer, he forcefully
resists arrest.  Id.

Analysis

In this case, Officer Hay testified
that he saw appellant hitting her boyfriend in the parking lot of a shopping
center and stopped to investigate. When he approached appellant, she resisted
by pulling away from him and moved in the opposite direction of Officer Hay=s instructions.  Once Officer
Hay handcuffed appellant, she freed her left hand.  When Officer Hay saw that appellant=s left hand was free, he and Officer Michna, who had arrived at the
scene, went back to recuff her.  Officer
Hay testified that appellant was more resistant when he handcuffed her the
second time. 








Additionally, appellant did
not cooperate when Officers Hay and Michna tried to put her in Officer Hay=s police car.  Officer Hay
testified that they had difficulty getting appellant to the car because she
continued to resist, struggle, and pull away from them.  He also testified that she ignored their
directions the entire time by pulling and pushing against them; when they
finally got her into the car, appellant began to kick, scream, and bang her
head against the windows of the car. 
Appellant screamed and cried hysterically while banging her head against
the Plexiglass and kicking the side windows. 
Appellant repeatedly kicked the windows in the police car to the point
where the glass came out of the window frame, and Officers Hay and Michna had
to restrain her feet.  Even as Officer
Hay secured her feet, appellant kicked at his face and remained uncooperative
by screaming and writhing away from him.

After securing appellant=s feet, Officer Hay continued to the jail, which was about five to ten
minutes away.  Officer Hay testified that

she
[appellant] continued banging her head against the front half of the cage and
screaming.  And she banged her head
against the glass on the car that C where it was already kicked
out some.  Both sides of my car, I
believe, were kicked out.  She was
banging her head against the glass as well. . . . [as] [t]he side glass.

 








Carrollton Police Officer
Glenn Michna also testified about appellant=s behavior.  He testified that
placing appellant in the patrol vehicle was a struggle because she resisted and
pulled away from them.  Officer Michna
testified that appellant Awould lean
back with her weight to not let us pull her forward and just drop her weight
where it was a struggle to pull her.@  Officer Michna also stated
that after appellant was in the car, she began to hit her head on the
windows.  Officer Michna testified that
he helped Officer Hay secure appellant=s feet after she continued to kick the windows in the police car.  He stated that appellant Ahad already kicked out the window,@ while sitting in the car and they Awanted to make sure she didn=t knock out a window where she could get out of the car.@  Officer Michna followed
Officer Hay to the jail and saw appellant struggling and hitting her head
against the Plexiglass.  Officer Michna
stated that appellant continued to yell and scream upon arriving at the jail.

Appellant also testified at
trial.  She testified that on the
afternoon of December 13, 2005, she had pinkeye and did not go to work.  She had picked up her boyfriend, Compagna,
and they were on their way to his house when he told her to pull over.  Compagna got out of the car and started to walk
home. Appellant testified that he was upset because she was late picking him
up.  She testified that she ran after
him, telling him to please get back in the car, but that she did not strike
him.  She said that she reached out to
him but not to hit him. 








Appellant also testified that
she initially pulled away from Officer Hay because she did not see him approach
her from behind, he did not identify himself, and her eye was infected.  He then placed her in handcuffs and put her
on the curb.  Appellant stated that her
handcuffs were not tight because of her thick sweater, and she got her left
hand free so that she could touch her eye. She said she was not trying to leave
and was still sitting on the curb, sobbing. When the officers saw that she was
not handcuffed, appellant testified, they jumped on her and held her down.  She received a scar on her face from being
face down on the concrete. 

Appellant also testified that
she was not struggling with the officers, but that she had difficulty walking
because of her four-inch boots. 
Appellant asked why she was being put in the police car, and the
officers never told her that she was under arrest.  Appellant stated she was crying and upset
because the officers did not ask her anything, not even her name.  She testified that she hit her head against
the windows because she was trying to get someone=s attention; she stated she was frustrated and had pinkeye. 








She also testified that she
was upset because she needed her medicine and because she was worried about her
car.  The officers let Compagna drive off
with her car.  She never tried to escape,
but she wanted to know what was going on. 
Appellant testified that she yelled and screamed because she was Acompletely emotionally distraught.@  She also testified that she
knew that her behavior was completely irrational, but that she was angry with
the situation and upset that Compagna had taken her car.  Appellant stated that she kicked the windows
to get someone=s attention
because she felt violated, but she did not intend to prevent or obstruct being
arrested or transported to jail.  Appellant
also testified that she did not kick at Officer Hay when he restrained her
feet, but that she was trying to move to the other side of the car to get away
from him.








Viewing the evidence in the
light most favorable to the verdict, we conclude that a reasonable juror could
have found beyond a reasonable doubt that appellant intentionally resisted the
officers= initial attempts to arrest her as well as Officer Hay=s attempt to transport her to jail. 
See Tex. Penal Code Ann.
' 38.03(a); Jackson, 443 U.S. at 319; 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.        Further, we
conclude and hold that when all the evidence is cast in a neutral light, it is
not too weak to sustain the jury=s finding of guilt beyond a reasonable doubt, nor is the contrary
evidence so strong that the State could not have met its burden of proof beyond
a reasonable doubt.  See Watson, 204
S.W.3d at 414-15; Hartis, 183 S.W.3d at 804.  The jury was entitled to believe the officers= testimonies and disbelieve appellant=s testimony to the contrary.  See
Johnson, 23 S.W.3d at 8-9.  The
testimonies of the officers alone were sufficient to show that appellant
resisted arrest and transport by pulling away from Officer Hay, by freeing one
of her hands from the handcuffs, by battling against the officers as they
placed her in the police car, by kicking the glass out of the window frames in
the police car, and by kicking at Officer Hay as he tried to restrain her
feet.  Accordingly, we overrule appellant=s first through fourth issues concerning the sufficiency of the
evidence.[1]

Charge in the Disjunctive

In her fifth issue, appellant
contends that she was denied her right to a unanimous verdict because of the
disjunctive submission of two different offenses or theories in the jury
charge: resisting arrest and resisting transport. Although this court has not
previously addressed this issue, we look to opinions of the Houston Fourteenth
District and the Dallas Court of Appeals, which have addressed section 38.03 in
a similar manner.  See Hartis, 183
S.W.3d at 804; Finster v. State, 152 S.W.3d 215, 218 (Tex. App.CDallas 2004, no pet.).

Applicable law








Appellate review of error in
a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731-32.

If there is error in the
court=s charge but the appellant did not object to it at trial, we must
decide whether the error was so egregious and created such harm that the
appellant did not have a fair and impartial trialCin short, that Aegregious
harm@ has occurred.  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim.
Proc. Ann. art. 36.19 (Vernon 2006); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996).

In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Almanza, 686 S.W.2d at
171; see generally Hutch, 922 S.W.2d at 172-74.  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227 (Tex.
Crim. App. 2002); Hutch, 922 S.W.2d at 171.








A jury verdict in a criminal
case is required to be unanimous.  Tex. Const. art. V, ' 13; Pizzo v. State, 235 S.W.3d 711, 714 (Tex. Crim. App.
2007); Rangel v. State, 199 S.W.3d 523, 540 (Tex. App.CFort Worth 2006, pet. granted). 
A unanimous jury verdict Aensures that the jury agrees on the factual elements underlying an
offense,@ requiring Amore than
mere agreement on a violation of a statute.@  Francis v. State, 36
S.W.3d 121, 125 (Tex. Crim. App. 2000); see also Rangel, 199 S.W.3d at
540.  Because of the possibility of a
nonunanimous jury verdict, Aseparate offenses@ may not be submitted to the jury in the disjunctive.  Francis, 36 S.W.3d at 124-25; Rangel,
199 S.W.3d at 540; Finster, 152 S.W.3d at 218.  A trial court may, however, submit a
disjunctive jury charge and obtain a general verdict when alternate theories or
Amanner and means@ involve the
commission of the Asame
offense.@  Francis, 36 S.W.3d at
124; Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert.
denied, 504 U.S. 958 (1992); Finster, 152 S.W.3d at 218; see also
Ngo v. State, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) (stating that the
phrase Amanner and means@ describes how
the defendant committed the specific statutory criminal act).  Thus, we must determine whether the jury
charge in this case merely charged alternate theories of committing the same
offense in the disjunctive or whether it included two or more separate offenses
charged disjunctively.  See Rangel, 199
S.W.3d at 540; see also Finster, 152 S.W.3d at 218.

Analysis

The relevant portions of the
jury charge read, 








Our law provides that a person commits the
offense of resisting arrest if she intentionally prevents or obstructs a person
she knows is a peace officer from effecting an arrest or transport of such
person or another person by using force against the peace officer.  It is no defense that the arrest or
transportation was unlawful.

. . . . 

Now, therefore, if you find from the evidence
beyond a reasonable doubt that on or about the 13th day of December,
2005, the defendant, AMBER NICOLE CLEMENT did then and there resist arrest in
Denton County, Texas, to wit: said defendant did intentionally prevent or
obstruct, Robert Hay, a person the defendant knew to be a peace officer, from
effecting an arrest or transportation of the defendant, by using force against
said peace officer you will find the defendant AGuilty@ as
charged in the information.

. . . .

Your verdict must be rendered upon the unanimous
vote of all members of the Jury.  You are
obligated by your oath to render a true verdict according to the law and the
evidence.  Each juror must agree upon the
verdict to be rendered.  You will not
decide the issue submitted for your deliberations by lot, by drawing straws or
by any other method of chance.  Neither
should you agree to a verdict by any vote less than unanimous vote of all
members of the Jury.

 








In Finster v. State, the
Dallas Court of Appeals analyzed whether the acts of resisting arrest, search,
or transportation under section 38.03 constituted one offense capable of being
committed under alternative theories. 
152 S.W.3d at 216.  In that case,
the appellant contended that he was denied his right to a unanimous verdict
because the charge allowed conviction for more than one offense: resisting
arrest or resisting transportation.   Id.
at 218.  The Dallas court examined
the structure and language of 38.03 and decided that the conduct proscribed was
the act of preventing or obstructing a peace officer from completing his tasks,
whatever they may be.  Id.  Thus, resisting arrest, resisting search,
or resisting transport under section 38.03 are three means by which one commits
the offense of preventing or obstructing a police officer=s completion of his or her duties. 
Id.     








The Houston Fourteenth
District Court of Appeals, citing Finster, also analyzed section 38.03Cresisting arrestCin Hartis
v. State.  183 S.W.3d at 796.  In that case, the appellant argued that
because section 38.03 provided three ways to commit the offense, the State
should have been required to specify the manner in which the appellant violated
it.  Id.  The Houston court was asked to determine
whether section 38.03 addressed more than one offense, which would require the
State to elect which offense it would attempt to prove.  Id. 
The court, using a separate-offense analysis, held that section
38.03 described a single offense: intentionally preventing or obstructing an
authorized person from effecting his duties. 
Id. at 799.  The court
reasoned  that the conduct proscribed by
section 38.03 is intentionally preventing or obstructing a police officer from
effectuating whichever of his duties he is trying to effect: an arrest, a
search, or a transport.  Id.  The court concluded that because the statute
proscribes only one type of conduct, the duties described by the statute do not
describe different offenses, but, rather, different methods by which a person
can prevent or obstruct an officer from effectuating his duties.  Id. 
Therefore, the statute does not describe different offenses, only
different means of committing the same offense and, thus, the State was not
required to make an election.  Id.

We adopt the Aseparate-offense analysis@ used by the Dallas and Houston Courts of Appeals in interpreting
section 38.03.  When a statute proscribes
different types of conduct, the use of the word Aor@ between the
descriptions of that conduct is some indication that the legislature intended
each to be a separate offense.  Vick
v. State, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999); Rangel, 199
S.W.3d at 540; Hartis, 183 S.W.3d at 798.  However, such use is not dispositive.  Hartis, 183 S.W.3d at 798.  In order to determine the number of offenses
addressed by the statute, we examine the language of the statute to identify
the conduct that constitutes a violation, and the object of the prohibited
conduct for whose benefit the statute was likely enacted.  See Pizzo, 235 S.W.3d at 714; Hartis,
183 S.W.3d at 798-99.   








In section 38.03, the conduct
proscribed is not Aeffecting an
arrest, search, or transportation@; it is Aintentionally
prevent[ing] or obstruct[ing] . . . by using force.@  Tex. Penal Code Ann. ' 38.03(a); see Sartain, 228 S.W.3d at 424; Hartis, 183
S.W.3d at 799.  We must therefore
determine if Apreventing@ and Aobstructing@ are different types of conduct. 
The definition of the word Aobstruction@ includes Asomething that impedes or hinders; . . . an obstacle;  . . . the act of impeding or hindering; . . .
interference.@  Black=s Law Dictionary 1107 (8th ed. 2004); see
Hartis, 183 S.W.3d at 799.  APrevent@ is
similarly defined as A[t]o hinder
or impede.@   Black=s Law Dictionary 1226 (8th ed. 2004);
see Hartis, 183 S.W.3d at 799.  Both
words can be used to mean Ahinder@ or Aimpede.@  Hartis, 183 S.W.3d at 799.  Based on the definitions and common usage of
these words, we cannot conclude that they describe different types of
conduct.  See id.








The object of the conduct is
also relevant to the determination of the number of offenses a statute
proscribes.  Id.  A defendant violates section 38.03 by
intentionally preventing or obstructing a peace officer or a person acting at a
peace officer=s direction Afrom effecting an arrest, search or transportation . . . by using
force.@  Tex. Penal Code Ann. ' 38.03(a); see Sartain, 228 S.W.3d at 424.  In other words, the conduct proscribed is the
act of intentionally preventing or obstructing an authorized person from
effectuating his duties by using force.  Hartis,
183 S.W.3d at 799; Finster, 152 S.W.3d at 219.  The particular duty that the defendant
impedes Ais simply another means by which a person could be interfering with a
police officer effecting his duties.@  Finster, 152 S.W.3d at
219; see also Ngo, 175 S.W.3d at 745-46 (stating that Amanner and means@ describes how
the defendant committed the specific statutory criminal act and that jurors
should not be required to agree upon a single means of commission).  Moreover, section 38.03 addresses the conduct
proscribed (preventing or obstructing) in one section, not in multiple sections
separated by the term Aor.@  Finster, 152 S.W.3d at
219.  Thus, the actions of
resisting arrest, resisting search, and resisting transportation are not
separated into multiple sections.  Id.


We adopt the reasoning of the
Dallas and Houston Courts of Appeals and join these courts in holding that
penal code section 38.03 describes only one offense, but identifies three
different means by which it can be committed. 
See Hartis, 183 S.W.3d 799; see also Finster, 152
S.W.3d. at 219.  Accordingly, we
hold that the trial court did not err by charging the jury in the disjunctive,
thus enabling the jurors to convict appellant by finding that she either
resisted arrest or resisted transport.  See
Kitchens, 823 S.W.2d at 258; Finster, 152 S.W.3d at 219.  Because the charge was not erroneous, it is
therefore unnecessary to perform an egregious harm analysis.  We overrule appellant=s fifth issue.

 

 

 

 








Conclusion

Having overruled all of
appellant=s issues, we
affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.  

 

PUBLISH

 

DELIVERED:
February 21, 2008











[1]Appellant
also argues that pre-arrest activity cannot be considered when reviewing
sufficiency evidence; however, even if we do not consider appellant=s
pre-arrest actions, there is ample evidence after her arrest to support the
jury=s
findings.