Amber Nicole CLEMENT, Appellant

v.

The STATE of Texas, State.

No. 2–06–435–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 21, 2008.

---

Dawn A. Moore, Boswell & Moore, P.C., Denton, TX, for Appellant.

Paul Johnson, Criminal District Atty., John A. Stride, Chief of Appellate Section, Asst. Criminal District Atty., Andrea R. Simmons and Ryan Sims, Asst. Criminal District Attys., Denton County, TX, for Appellee.

Panel F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### Introduction

Appellant Amber Nicole Clement appeals her conviction for the offense of resisting arrest or transport. In issues one through four, appellant argues that the evidence is legally and factually insufficient to support her conviction. In issue five, appellant asserts that the jury did not render a unanimous verdict because of the erroneous disjunctive submission of two different offenses or theories of committing the crime in the charge. We affirm.

### Background Facts

On December 13, 2005, at about 3:00 p.m., Carrollton Police Officer Robert Hay saw the twenty-one-year-old appellant striking her boyfriend, Kyle Compagna, in the parking lot of a shopping center in the 1000 block of East Frankford Road in Denton County. Officer Hay saw that Compagna put his hands up in a defensive motion as he tried to walk away from appellant, but she followed him. Officer Hay pulled into the parking lot, turned on the lights on his marked patrol car, and called for backup. He then tried to separate appellant and Compagna. Officer Hay testified that while appellant continued to strike Compagna, Officer Hay walked up behind her and grabbed her arms. He also testified that appellant pulled away from him and resisted his directions. Officer Hay was wearing his police uniform.

Carrollton Police Officer Glenn Michna responded to Officer Hay's call and arrived in the parking lot about thirty seconds after Officer Hay called for backup. When Officer Michna arrived, he saw Officer Hay following appellant, who was chasing a male. He then saw Officer Hay place appellant in handcuffs.

After handcuffing appellant, Officer Hay placed her on the curb and went to speak to Compagna. While Officer Hay conducted his investigation, appellant slipped her left hand out of the handcuffs. Officer Hay testified that appellant wore a thick sweater and because of her resistance to being handcuffed, he placed the handcuffs over the sweater. The sweater came out from beneath the handcuffs, which gave appellant enough room for her left hand to come out. When Officer Hay saw that appellant's left hand was free, he and Officer Michna went to recuff her. Officer Michna corroborated Officer Hay's testimony about the handcuffs.

After the officers recuffed appellant, they tried to put her in the back of Officer Hay's police car. Officer Hay testified that appellant did not cooperate and that he had difficulty getting her to the car because she moved in the opposite direction from the one directed by the officers and continued to resist and struggle. He also testified that appellant pushed against him and Officer Michna the entire time and that from the beginning "it was a constant battle." Officer Michna testified that he heard Officer Hay tell appellant that she was going to jail. When Officers Hay and Michna finally got appellant into the car, she began to kick, scream, and bang her head against the windows of the car. While Officer Hay finished his investigation, appellant continued to scream and cry hysterically in the car. Appellant repeatedly banged her head against the side window and on the Plexiglass that separat-

ed the front seat from the back seat. Appellant also lay down across the seat and kicked the side windows. After about fifteen minutes, Officer Hay got into his car to take appellant to the police station, but he drove only about thirty yards before he had to stop because appellant continued to kick the side windows in the police car; appellant kicked the windows so hard that they came out of their frames. He and Officer Michna opened the door to restrain appellant's feet, and she kicked at Officer Hay's face, although her foot did not make contact. Appellant continued to kick, convulse, and scream as the officers placed her feet in restraints. Appellant also continued to bang her head against the Plexiglass.

After securing appellant's feet in restraints, Officer Hay continued to the police station, which was about five to ten minutes away. Officer Hay pulled into the garage area of the jail, and several officers came to help get appellant out of the car. An officer asked appellant to stop fighting and to calm down, but she continued to cry hysterically as they took her inside.

The State charged appellant with the offense of resisting arrest, search, or transport. On November 16, 2006, a jury found appellant guilty of that offense. The trial court sentenced appellant to three hundred days' confinement, suspended for twenty-four months.

### Sufficiency of the Evidence

In appellant's issues one through four, she argues that the evidence was legally and factually insufficient to support her conviction for resisting arrest or transport.

**Standard of review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

■ The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Bowden v. State*, 166 S.W.3d 466, 470 (Tex.App.-Fort Worth 2005, pet. ref'd). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex.Crim. App.2001); *Malik*, 953 S.W.2d at 240. · The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App.2000).

■ When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex.Crim.App.2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim. App.2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

■ In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the

fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim.App.1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9.

■ An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

**Applicable law**

Although appellant separates her sufficiency issues into challenges to a conviction for resisting arrest and a conviction for resisting transportation, the judgment reflects that appellant was convicted of a single offense, resisting arrest or transport. *See Hartis v. State*, 183 S.W.3d 793, 803 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding that section 38.03 encompasses various ways of committing the single offense of resisting arrest, search or transport, although the appellant separated his sufficiency challenges into two issues: resisting arrest and resisting transport). To obtain a conviction in this case, the State was required to prove that appellant intentionally prevented or obstructed a person she knew was a peace officer from effecting an arrest, search, or transportation of appellant by using force against the peace officer. TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003).

■ A person can forcefully resist an arrest without successfully making physical contact with the officer. *See Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.-Fort Worth 2007, pet. ref'd); *see also Haliburton v. State*, 80 S.W.3d 309, 312–13 (Tex.App.-Fort Worth 2002, no pet.) (holding that a defendant's act of "kicking at" an officer constituted force even though the kick did not connect). One who uses force to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03. *Sartain*, 228 S.W.3d at 424. Further, when a defendant thrashes his arms and legs and is combative towards an officer, he forcefully resists arrest. *Id.*

**Analysis**

■ In this case, Officer Hay testified that he saw appellant hitting her boyfriend in the parking lot of a shopping center and stopped to investigate. When he approached appellant, she resisted by pulling away from him and moved in the opposite direction of Officer Hay's instructions. Once Officer Hay handcuffed appellant, she freed her left hand. When Officer Hay saw that appellant's left hand was free, he and Officer Michna, who had arrived at the scene, went back to recuff her. Officer Hay testified that appellant was more resistant when he handcuffed her the second time.

Additionally, appellant did not cooperate when Officers Hay and Michna tried to put her in Officer Hay's police car. Officer Hay testified that they had difficulty getting appellant to the car because she continued to resist, struggle, and pull away from them. He also testified that she ignored their directions the entire time by pulling and pushing against them; when they finally got her into the car, appellant began to kick, scream, and bang her head against the windows of the car. Appellant

screamed and cried hysterically while banging her head against the Plexiglass and kicking the side windows. Appellant repeatedly kicked the windows in the police car to the point where the glass came out of the window frame, and Officers Hay and Michna had to restrain her feet. Even as Officer Hay secured her feet, appellant kicked at his face and remained uncooperative by screaming and writhing away from him.

After securing appellant's feet, Officer Hay continued to the jail, which was about five to ten minutes away. Officer Hay testified that

she [appellant] continued banging her head against the front half of the cage and screaming. And she banged her head against the glass on the car that— where it was already kicked out some. Both sides of my car, I believe, were kicked out. She was banging her head against the glass as well .... [as][t]he side glass.

Carrollton Police Officer Glenn Michna also testified about appellant's behavior. He testified that placing appellant in the patrol vehicle was a struggle because she resisted and pulled away from them. Officer Michna testified that appellant "would lean back with her weight to not let us pull her forward and just drop her weight where it was a struggle to pull her." Officer Michna also stated that after appellant was in the car, she began to hit her head on the windows. Officer Michna testified that he helped Officer Hay secure appellant's feet after she continued to kick the windows in the police car. He stated that appellant "had already kicked out the window," while sitting in the car and they "wanted to make sure she didn't knock out a window where she could get out of the car." Officer Michna followed Officer Hay to the jail and saw appellant struggling and hitting her head against the Plexi-

glass. Officer Michna stated that appellant continued to yell and scream upon arriving at the jail.

Appellant also testified at trial. She testified that on the afternoon of December 13, 2005, she had pinkeye and did not go to work. She had picked up her boyfriend, Compagna, and they were on their way to his house when he told her to pull over. Compagna got out of the car and started to walk home. Appellant testified that he was upset because she was late picking him up. She testified that she ran after him, telling him to please get back in the car, but that she did not strike him. She said that she reached out to him but not to hit him.

Appellant also testified that she initially pulled away from Officer Hay because she did not see him approach her from behind, he did not identify himself, and her eye was infected. He then placed her in handcuffs and put her on the curb. Appellant stated that her handcuffs were not tight because of her thick sweater, and she got her left hand free so that she could touch her eye. She said she was not trying to leave and was still sitting on the curb, sobbing. When the officers saw that she was not handcuffed, appellant testified, they jumped on her and held her down. She received a scar on her face from being face down on the concrete.

Appellant also testified that she was not struggling with the officers, but that she had difficulty walking because of her four-inch boots. Appellant asked why she was being put in the police car, and the officers never told her that she was under arrest. Appellant stated she was crying and upset because the officers did not ask her anything, not even her name. She testified that she hit her head against the windows because she was trying to get someone's attention; she stated she was frustrated and had pinkeye.

She also testified that she was upset because she needed her medicine and because she was worried about her car. The officers let Compagna drive off with her car. She never tried to escape, but she wanted to know what was going on. Appellant testified that she yelled and screamed because she was "completely emotionally distraught." She also testified that she knew that her behavior was completely irrational, but that she was angry with the situation and upset that Compagna had taken her car. Appellant stated that she kicked the windows to get someone's attention because she felt violated, but she did not intend to prevent or obstruct being arrested or transported to jail. Appellant also testified that she did not kick at Officer Hay when he restrained her feet, but that she was trying to move to the other side of the car to get away from him.

Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable juror could have found beyond a reasonable doubt that appellant intentionally resisted the officers' initial attempts to arrest her as well as Officer Hay's attempt to transport her to jail. *See* TEX. PENAL CODE ANN. § 38.03(a); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton,* 235 S.W.3d at 778. Further, we conclude and hold that when all the evidence is cast in a neutral light, it is not too weak to sustain the jury's finding of guilt beyond a reasonable doubt, nor is the contrary evidence so strong that the State could not have met its burden of proof beyond a reasonable doubt. *See Watson,* 204 S.W.3d at 414–15; *Hartis,* 183 S.W.3d at 804. The jury was entitled to believe the officers' testimonies and disbelieve appellant's testimony to the contrary. *See*

*Johnson,* 23 S.W.3d at 8–9. The testimonies of the officers alone were sufficient to show that appellant resisted arrest and transport by pulling away from Officer Hay, by freeing one of her hands from the handcuffs, by battling against the officers as they placed her in the police car, by kicking the glass out of the window frames in the police car, and by kicking at Officer Hay as he tried to restrain her feet. Accordingly, we overrule appellant's first through fourth issues concerning the sufficiency of the evidence.[1]

### Charge in the Disjunctive

In her fifth issue, appellant contends that she was denied her right to a unanimous verdict because of the disjunctive submission of two different offenses or theories in the jury charge: resisting arrest and resisting transport. Although this court has not previously addressed this issue, we look to opinions of the Houston Fourteenth District and the Dallas Court of Appeals, which have addressed section 38.03 in a similar manner. *See Hartis,* 183 S.W.3d at 804; *Finster v. State,* 152 S.W.3d 215, 218 (Tex.App.-Dallas 2004, no pet.).

### Applicable law

■ Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

■ If there is error in the court's charge but the appellant did not object to it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egre-

---

1. Appellant also argues that pre-arrest activity cannot be considered when reviewing sufficiency evidence; however, even if we do not consider appellant's pre-arrest actions, there is ample evidence after her arrest to support the jury's findings.

gious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g); *see* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim. App.1996). In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim. App.2002); *Hutch*, 922 S.W.2d at 171.

 A jury verdict in a criminal case is required to be unanimous. TEX. CONST. art. V, § 13; *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex.Crim.App.2007); *Rangel v. State*, 199 S.W.3d 523, 540 (Tex. App.-Fort Worth 2006, pet. granted). A unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense," requiring "more than mere agreement on a violation of a statute." *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App.2000); *see also Rangel*, 199 S.W.3d at 540. Because of the possibility of a nonunanimous jury verdict, "separate offenses" may not be submitted to the jury in the disjunctive. *Francis*, 36 S.W.3d at 124–25; *Rangel*, 199 S.W.3d at 540; *Finster*, 152 S.W.3d at 218. A trial court may, however, submit a disjunctive jury charge and obtain a general verdict when alternate theories or "manner and means" involve the commission of the "same offense." *Francis*, 36 S.W.3d at 124; *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim.App.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992);

*Finster*, 152 S.W.3d at 218; *see also Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim. App.2005) (stating that the phrase "manner and means" describes *how* the defendant committed the specific statutory criminal act). Thus, we must determine whether the jury charge in this case merely charged alternate theories of committing the same offense in the disjunctive or whether it included two or more separate offenses charged disjunctively. *See Rangel*, 199 S.W.3d at 540; *see also Finster*, 152 S.W.3d at 218.

**Analysis**

The relevant portions of the jury charge read,

> Our law provides that a person commits the offense of resisting arrest if she intentionally prevents or obstructs a person she knows is a peace officer from effecting an arrest or transport of such person or another person by using force against the peace officer. It is no defense that the arrest or transportation was unlawful.
>
> . . . .
>
> Now, therefore, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of December, 2005, the defendant, AMBER NICOLE CLEMENT did then and there resist arrest in Denton County, Texas, to wit: said defendant did intentionally prevent or obstruct, Robert Hay, a person the defendant knew to be a peace officer, from effecting an arrest or transportation of the defendant, by using force against said peace officer you will find the defendant "Guilty" as charged in the information.
>
> . . . .
>
> Your verdict must be rendered upon the unanimous vote of all members of the Jury. You are obligated by your oath to render a true verdict according to the law and the evidence. Each juror must

agree upon the verdict to be rendered. You will not decide the issue submitted for your deliberations by lot, by drawing straws or by any other method of chance. Neither should you agree to a verdict by any vote less than unanimous vote of all members of the Jury.

In *Finster v. State,* the Dallas Court of Appeals analyzed whether the acts of resisting arrest, search, or transportation under section 38.03 constituted one offense capable of being committed under alternative theories. 152 S.W.3d at 216. In that case, the appellant contended that he was denied his right to a unanimous verdict because the charge allowed conviction for more than one offense: resisting arrest or resisting transportation. *Id.* at 218. The Dallas court examined the structure and language of 38.03 and decided that the conduct proscribed was the act of preventing or obstructing a peace officer from completing his tasks, whatever they may be. *Id.* Thus, resisting arrest, resisting search, or resisting transport under section 38.03 are three means by which one commits the offense of preventing or obstructing a police officer's completion of his or her duties. *Id.*

The Houston Fourteenth District Court of Appeals, citing *Finster,* also analyzed section 38.03—resisting arrest—in *Hartis v. State.* 183 S.W.3d at 796. In that case, the appellant argued that because section 38.03 provided three ways to commit the offense, the State should have been required to specify the manner in which the appellant violated it. *Id.* The Houston court was asked to determine whether section 38.03 addressed more than one offense, which would require the State to elect which offense it would attempt to prove. *Id.* The court, using a separate-offense analysis, held that section 38.03 described a single offense: intentionally preventing or obstructing an authorized person from effecting his duties. *Id.* at

799. The court reasoned that the conduct proscribed by section 38.03 is intentionally preventing or obstructing a police officer from effectuating whichever of his duties he is trying to effect: an arrest, a search, or a transport. *Id.* The court concluded that because the statute proscribes only one type of conduct, the duties described by the statute do not describe different offenses, but, rather, different methods by which a person can prevent or obstruct an officer from effectuating his duties. *Id.* Therefore, the statute does not describe different offenses, only different means of committing the same offense and, thus, the State was not required to make an election. *Id.*

 We adopt the "separate-offense analysis" used by the Dallas and Houston Courts of Appeals in interpreting section 38.03. When a statute proscribes different types of conduct, the use of the word "or" between the descriptions of that conduct is some indication that the legislature intended each to be a separate offense. *Vick v. State,* 991 S.W.2d 830, 832–33 (Tex.Crim.App.1999); *Rangel,* 199 S.W.3d at 540; *Hartis,* 183 S.W.3d at 798. However, such use is not dispositive. *Hartis,* 183 S.W.3d at 798. In order to determine the number of offenses addressed by the statute, we examine the language of the statute to identify the conduct that constitutes a violation, and the object of the prohibited conduct for whose benefit the statute was likely enacted. *See Pizzo,* 235 S.W.3d at 714; *Hartis,* 183 S.W.3d at 798–99.

 In section 38.03, the conduct proscribed is not "effecting an arrest, search, or transportation"; it is "intentionally prevent[ing] or obstruct[ing] ... by using force." TEX. PENAL CODE ANN. § 38.03(a); *see Sartain,* 228 S.W.3d at 424; *Hartis,* 183 S.W.3d at 799. We must therefore determine if "preventing" and "obstructing" are different types of conduct. The

definition of the word "obstruction" includes "something that impedes or hinders; . . . an obstacle; . . . the act of impeding or hindering; . . . interference." BLACK'S LAW DICTIONARY 1107 (8th ed.2004); *see Hartis,* 183 S.W.3d at 799. "Prevent" is similarly defined as "[t]o hinder or impede." BLACK'S LAW DICTIONARY 1226 (8th ed.2004); *see Hartis,* 183 S.W.3d at 799. Both words can be used to mean "hinder" or "impede." *Hartis,* 183 S.W.3d at 799. Based on the definitions and common usage of these words, we cannot conclude that they describe different types of conduct. *See id.*

 The object of the conduct is also relevant to the determination of the number of offenses a statute proscribes. *Id.* A defendant violates section 38.03 by intentionally preventing or obstructing a peace officer or a person acting at a peace officer's direction "from effecting an arrest, search or transportation . . . by using force." TEX. PENAL CODE ANN. § 38.03(a); *see Sartain,* 228 S.W.3d at 424. In other words, the conduct proscribed is the act of intentionally preventing or obstructing an authorized person from effectuating his duties by using force. *Hartis,* 183 S.W.3d at 799; *Finster,* 152 S.W.3d at 219. The particular duty that the defendant impedes "is simply another means by which a person could be interfering with a police officer effecting his duties." *Finster,* 152 S.W.3d at 219; *see also Ngo,* 175 S.W.3d at 745–46 (stating that "manner and means" describes *how* the defendant committed the specific statutory criminal act and that jurors should not be required to agree upon a single means of commission). Moreover, section 38.03 addresses the conduct proscribed (preventing or obstructing) in one section, not in multiple sections separated by the term "or." *Finster,* 152 S.W.3d at 219. Thus, the actions of resisting arrest, resisting search, and resisting transportation are not separated into multiple sections. *Id.*

We adopt the reasoning of the Dallas and Houston Courts of Appeals and join these courts in holding that penal code section 38.03 describes only one offense, but identifies three different means by which it can be committed. *See Hartis,* 183 S.W.3d at 799; *see also Finster,* 152 S.W.3d. at 219. Accordingly, we hold that the trial court did not err by charging the jury in the disjunctive, thus enabling the jurors to convict appellant by finding that she either resisted arrest or resisted transport. *See Kitchens,* 823 S.W.2d at 258; *Finster,* 152 S.W.3d at 219. Because the charge was not erroneous, it is therefore unnecessary to perform an egregious harm analysis. We overrule appellant's fifth issue.

### Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.