

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00358-CR

JACQUELEN MAXFIELD                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Jacquelen Maxfield of resisting arrest and assessed her punishment at 100 days' confinement in Tarrant County Jail. Handwritten on the jury's verdict form is a note: "[W]e ask the court and county to test [Appellant's] psychological stability[,] and we recommend treatment for said diagnosis and anger management."

---

[1]*See* Tex. R. App. P. 47.4.

The trial court sentenced Appellant in accordance with the jury verdict. In her sole point, Appellant contends that the evidence is insufficient to support her conviction. Because we hold that the evidence is sufficient to support her conviction, we affirm the trial court's judgment.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] The trier of fact is the sole judge of the weight and credibility of the evidence.[4]

The information charged that Appellant,

> on or about the 11th day of December 2009, did THEN AND THERE INTENTIONALLY PREVENT OR OBSTRUCT N. NOBLE, A PERSON SHE KNEW TO BE A PEACE OFFICER, FROM EFFECTING AN ARREST OR SEARCH OF [HER], BY USING FORCE AGAINST SAID PEACE OFFICER, TO-WIT: SWINGING HER ARMS AT N. NOBLE, OR SCRATCHING N. NOBLE, OR KICKING AT N. NOBLE.

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

Section 38.03 of the penal code provides in relevant part:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer . . . .

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

(c) Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.[5]

As this court has previously explained,

A person can forcefully resist an arrest without successfully making physical contact with the officer. One who uses force to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03. Further, when a defendant thrashes his arms and legs and is combative towards an officer, he forcefully resists arrest.[6]

Officer Nathan Noble of the Bedford Police Department testified that on December 11, 2009, he and two other uniformed officers, Officers Charlie Cottongame and Lane Simmons, were dispatched on a domestic violence call. When they arrived at the indicated house, which is located in Bedford, Tarrant County, Texas, they saw a man walk outside through the front door. He was visibly upset and had some shortness of breath. Officers Cottongame and Simmons saw some red marks on the man's face. Officer Simmons testified without objection that the man said that his wife was hitting him. Officer Noble

---

[5]Tex. Penal Code Ann. § 38.03 (West 2011).

[6]*Clement v. State*, 248 S.W.3d 791, 797 (Tex. App.—Fort Worth 2008, no pet.) (citations omitted).

3

opened the glass front door, entered the house, and began to speak with a woman, Appellant. He testified that she was hostile and cursed the officers, telling them that they did not have permission to be in her home. Officers Noble and Cottongame both testified that Officer Cottongame asked the man who had exited the house, Mr. Maxfield, for permission to enter the house, and Mr. Maxfield gave it. Officer Noble admitted, however, that he was already inside the house by this time, and Officer Cottongame admitted that his report did not mention consent and that he did not ask for consent to enter until after he had opened the door and Appellant had told him to get out. The officers testified that exigency justified their warrantless entry into the home.

Officer Noble testified that Appellant would not sit down when asked and would not cooperate with the investigation, maintaining an aggressive attitude. She also refused to identify herself. The police decided to arrest her based on the information they had. She initially cooperated with the arrest, but Officer Noble testified that when he "touched her right hand to place the handcuffs on her, she immediately became physically violent, twisting her body around [and] swinging her elbows backwards towards [him] and Officer Cottongame . . . ." Officer Noble also testified that she kicked her legs backwards, her legs brushed up against his legs, and he watched as she intentionally scratched him, causing his left pointer finger to bleed. Officer Cottongame confirmed that he saw her scratch Officer Noble and draw blood, and Officer Simmons confirmed that he

4

saw blood on Officer Noble's hands and that Officer Noble was holding his finger after the officers secured Appellant in the car.

After being handcuffed, according to Officer Noble, Appellant dropped to her knees, becoming dead weight. She refused the officers' commands to stand up, so they picked her up to her feet. As they left the house and walked toward the police car, she began dragging her feet to become dead weight again, so the officers dragged her to the car. She dropped to her knees again at the open car door. She refused multiple commands to get up and get in the car, so they pushed and pulled her into the car. According to Officer Noble, Appellant "kicked her legs from the time [the officers] started moving her over to the couch . . . until [they] got her to the car."

Appellant denied scratching her husband's face but admitted that she and her husband had an argument. She said that he called the police on his cell phone and that when the police arrived, her husband had already walked outside. She testified, however, that one officer went immediately to her husband but that the other two officers walked "right into the home." She repeatedly ordered them out. They refused. She testified that Officer Noble told her to sit down but that she did not want to sit down because he had no permission to be in her house, so he pushed her onto an overstuffed leather chair. She testified that the way Officer Noble positioned the handcuffs at first hurt the bones of her wrists and that she and Officer Noble struggled. Appellant denied swinging her arms or kicking at the officers. She also denied intentionally

5

scratching Officer Noble and stated that she believed that the handcuffs, not her nails, scratched him. Appellant also testified that the police did not give her an opportunity to get to her feet after they handcuffed her and that they just dragged her to the car. She admitted that by the time they arrived at the car,

> [T]he officer opened the car door and wanted me to just happily get in the car, but by then, why should I get in the car? They had no right to arrest me. My husband was sitting in the rocking chair smiling and laughing, thinking it was great.

The statute specifically provides that an illegal arrest is no defense to prosecution for resisting arrest.[7] Further, to the extent that Appellant tries to draw some connection between the jury note indicating its belief that she needs a psychological evaluation and anger management and the intentionality element of the offense, the jury could have believed Officer Noble's testimony that he saw Appellant scratch him and that it was "[a]bsolutely" intentional and disbelieved Appellant's denial.[8] We further note that no issue concerning her competence or insanity was raised or preserved below or raised here.[9]

---

[7]*See* Tex. Penal Code Ann. § 38.03(b).

[8]*See* Tex. Code Crim. Proc. Ann. art. 38.04; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brown*, 270 S.W.3d at 568; *Clayton*, 235 S.W.3d at 778.

[9]*See* Tex. R. App. P. 33.1(a)(1), (2), 38.1(i); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001).

Consequently, based on the appropriate standard of review, we hold that a rational jury could find that the State proved the elements of resisting arrest beyond a reasonable doubt. We therefore overrule Appellant's sole point and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 11, 2011

7