02-10-358-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00358-CR

 

 


 
 
 Jacquelen Maxfield
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 5 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Jacquelen Maxfield of resisting arrest and assessed
her punishment at 100 days’ confinement in Tarrant County Jail.  Handwritten on
the jury’s verdict form is a note:  “[W]e ask the court and county to test
[Appellant’s] psychological stability[,] and we recommend treatment for said
diagnosis and anger management.”

The
trial court sentenced Appellant in accordance with the jury verdict.  In her
sole point, Appellant contends that the evidence is insufficient to support her
conviction.  Because we hold that the evidence is sufficient to support her
conviction, we affirm the trial court’s judgment.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.[2]  This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.[3] 
The trier of fact is the sole judge of the weight and credibility of the
evidence.[4]

The
information charged that Appellant,

on or about the 11th day
of December 2009, did THEN AND THERE INTENTIONALLY PREVENT OR OBSTRUCT N.
NOBLE, A PERSON SHE KNEW TO BE A PEACE OFFICER, FROM EFFECTING AN ARREST OR
SEARCH OF [HER], BY USING FORCE AGAINST SAID PEACE OFFICER, TO-WIT:  SWINGING
HER ARMS AT N. NOBLE, OR SCRATCHING N. NOBLE, OR KICKING AT N. NOBLE.

Section
38.03 of the penal code provides in relevant part:

(a) A person commits
an offense if he intentionally prevents or obstructs a person he knows is a
peace officer . . . from effecting an arrest . . .
of the actor . . . by using force against the peace officer . . . .

(b) It is no defense
to prosecution under this section that the arrest or search was unlawful.

(c) Except as
provided in Subsection (d), an offense under this section is a Class A
misdemeanor.[5]

As
this court has previously explained,

A
person can forcefully resist an arrest without successfully making physical
contact with the officer.  One who uses force to shake off an officer’s
detaining grip, whether by pushing or pulling, may be guilty of resisting arrest
under section 38.03.  Further, when a defendant thrashes his arms and legs and
is combative towards an officer, he forcefully resists arrest.[6]

Officer
Nathan Noble of the Bedford Police Department testified that on December 11,
2009, he and two other uniformed officers, Officers Charlie Cottongame and Lane
Simmons, were dispatched on a domestic violence call.  When they arrived at the
indicated house, which is located in Bedford, Tarrant County, Texas, they saw a
man walk outside through the front door.  He was visibly upset and had some
shortness of breath.  Officers Cottongame and Simmons saw some red marks on the
man’s face.  Officer Simmons testified without objection that the man said that
his wife was hitting him.  Officer Noble opened the glass front door, entered
the house, and began to speak with a woman, Appellant.  He testified that she
was hostile and cursed the officers, telling them that they did not have
permission to be in her home.  Officers Noble and Cottongame both testified
that Officer Cottongame asked the man who had exited the house, Mr. Maxfield,
for permission to enter the house, and Mr. Maxfield gave it.  Officer Noble
admitted, however, that he was already inside the house by this time, and
Officer Cottongame admitted that his report did not mention consent and that he
did not ask for consent to enter until after he had opened the door and
Appellant had told him to get out.  The officers testified that exigency
justified their warrantless entry into the home.

Officer
Noble testified that Appellant would not sit down when asked and would not
cooperate with the investigation, maintaining an aggressive attitude.  She also
refused to identify herself.  The police decided to arrest her based on the
information they had.  She initially cooperated with the arrest, but Officer Noble
testified that when he “touched her right hand to place the handcuffs on her,
she immediately became physically violent, twisting her body around [and]
swinging her elbows backwards towards [him] and Officer Cottongame . . . .” 
Officer Noble also testified that she kicked her legs backwards, her legs
brushed up against his legs, and he watched as she intentionally scratched him,
causing his left pointer finger to bleed.  Officer Cottongame confirmed that he
saw her scratch Officer Noble and draw blood, and Officer Simmons confirmed
that he saw blood on Officer Noble’s hands and that Officer Noble was holding
his finger after the officers secured Appellant in the car.

After
being handcuffed, according to Officer Noble, Appellant dropped to her knees,
becoming dead weight.  She refused the officers’ commands to stand up, so they
picked her up to her feet.  As they left the house and walked toward the police
car, she began dragging her feet to become dead weight again, so the officers
dragged her to the car.  She dropped to her knees again at the open car door. 
She refused multiple commands to get up and get in the car, so they pushed and
pulled her into the car.  According to Officer Noble, Appellant “kicked her legs
from the time [the officers] started moving her over to the couch . . .
until [they] got her to the car.”

Appellant
denied scratching her husband’s face but admitted that she and her husband had
an argument.  She said that he called the police on his cell phone and that
when the police arrived, her husband had already walked outside.  She
testified, however, that one officer went immediately to her husband but that
the other two officers walked “right into the home.”  She repeatedly ordered
them out.  They refused.  She testified that Officer Noble told her to sit down
but that she did not want to sit down because he had no permission to be in her
house, so he pushed her onto an overstuffed leather chair.  She testified that
the way Officer Noble positioned the handcuffs at first hurt the bones of her
wrists and that she and Officer Noble struggled.  Appellant denied swinging her
arms or kicking at the officers.  She also denied intentionally scratching
Officer Noble and stated that she believed that the handcuffs, not her nails,
scratched him.  Appellant also testified that the police did not give her an
opportunity to get to her feet after they handcuffed her and that they just
dragged her to the car.  She admitted that by the time they arrived at the car,

[T]he officer opened
the car door and wanted me to just happily get in the car, but by then, why
should I get in the car?  They had no right to arrest me.  My husband was
sitting in the rocking chair smiling and laughing, thinking it was great.

The
statute specifically provides that an illegal arrest is no defense to
prosecution for resisting arrest.[7]  Further, to the extent
that Appellant tries to draw some connection between the jury note indicating
its belief that she needs a psychological evaluation and anger management and
the intentionality element of the offense, the jury could have believed Officer
Noble’s testimony that he saw Appellant scratch him and that it was
“[a]bsolutely” intentional and disbelieved Appellant’s denial.[8] 
We further note that no issue concerning her competence or insanity was raised
or preserved below or raised here.[9]

Consequently,
based on the appropriate standard of review, we hold that a rational jury could
find that the State proved the elements of resisting arrest beyond a reasonable
doubt.  We therefore overrule Appellant’s sole point and affirm the trial
court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 11, 2011









[1]See Tex. R. App. P. 47.4.





[2]Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).





[3]Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.





[4]See Tex. Code Crim.
Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).





[5]Tex. Penal Code Ann. §
38.03 (West 2011).





[6]Clement v. State,
248 S.W.3d 791, 797 (Tex. App.—Fort Worth 2008, no pet.) (citations omitted).





[7]See Tex. Penal Code
Ann. § 38.03(b).





[8]See Tex. Code Crim.
Proc. Ann. art. 38.04; Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Brown,
270 S.W.3d at 568; Clayton, 235 S.W.3d at 778.





[9]See Tex. R. App. P.
33.1(a)(1), (2), 38.1(i); Ford v. State, 305 S.W.3d 530, 532 (Tex. Crim.
App. 2009); Layton v. State, 280 S.W.3d 235, 238–39 (Tex. Crim. App.
2009); Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), cert.
denied, 548 U.S. 926 (2006); Mendez v. State, 138 S.W.3d 334, 341
(Tex. Crim. App. 2004). Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim.
App. 2000), cert. denied, 532 U.S. 1053 (2001).