

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00301-CR

Jack Edward **MILLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 633088
Honorable Wayne A. Christian, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:       Irene Rios, Justice
               Lori Massey Brissette, Justice
               H. Todd McCray, Justice

Delivered and Filed: September 17, 2025

AFFIRMED

Appellant Jack Edward Miller appeals his conviction for resisting arrest, search, or transportation. *See* TEX. PENAL CODE ANN. § 38.03(a). In three issues, Miller challenges the sufficiency of the evidence to support his conviction and raises constitutional complaints regarding section 38.03(b) of the Texas Penal Code. *See id.* § 38.03(b). We affirm.

**BACKGROUND**

A jury convicted Miller of resisting arrest, search, or transportation. *See id.* § 38.03(a). The trial court sentenced Miller to confinement of one year and assessed a fine of $1,000 and court costs of $325. The trial court suspended Miller's jail sentence and placed him on community supervision for two years. Miller appeals.

Initially, Miller's first appointed appellate attorney filed a brief containing a professional evaluation of the record in accordance with *Anders v. California*, 386 U.S. 738 (1967). This court, after reviewing the briefs and the record, concluded there were arguable grounds for appeal, including whether the trial court erred by failing to make an inquiry on the record regarding the defendant's ability to immediately pay all or part of the fine and court costs. *Miller v. State*, No. 04-22-00301-CR, 2024 WL 1184457, at *1 (Tex. App.—San Antonio March 24, 2024, no pet.) (mem. op., not designated for publication). We abated Miller's appeal, remanded the case to the trial court, and ordered the trial court to appoint new appellate counsel to present all arguable grounds of error, including but not limited to the nonfrivolous ground noted in the opinion. *See id*. at *2.

Miller's new appellate counsel filed a merits-based brief arguing three appellate issues: two challenging the sufficiency of the evidence to support his conviction and the third contending that a portion of the statute, under which Miller was convicted that statutorily removed a defense, is unconstitutional on its face and as-applied to Miller.[1]

---

[1] Miller's new appellate counsel did not address whether the trial court erred by failing to make an inquiry on the record regarding the defendant's ability to immediately pay all or part of the fine and court costs. After this court remanded Miller's case for appointment of new counsel, the Texas Court of Criminal Appeals held a trial court's failure to inquire on the record regarding the defendant's ability to immediately pay all or part of the fine and court costs is a forfeitable right absent an objection or request. *See Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024). Miller did not object to the trial court's failure to inquire or request the trial court make the inquiry; and thus, the issue is waived. *See id*. Therefore, we do not further address in this opinion that issue we noted in our prior opinion.

**SUFFICIENCY OF THE EVIDENCE**

In Miller's first two issues, he argues the evidence is insufficient to support his conviction for resisting arrest, search, or transportation because (1) no evidence proves he used force against the officer, and (2) his arrest was complete before he allegedly "butted" the officer's head. *See* TEX. PENAL CODE ANN. § 38.03(a).

*A.  Standard of Review and Applicable Law*

We review a challenge to the legal sufficiency of the evidence under the well-established standards set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Wilson v. State*, 448 S.W.3d 418, 425 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See id.* We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense. *See id.* We measure the legal sufficiency of the evidence by comparing the evidence produced at trial to the essential elements of the offense as defined by the hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[W]e should look at events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* (internal quotation marks omitted).

The penal code provides that a person commits the offense of resisting arrest, search, or transportation if the person "intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor . . . by using force against

the peace officer[.]" TEX. PENAL CODE ANN. § 38.03(a). A person acts with intent "when it is his conscious objective or desire to engage in the conduct or cause the result." *Id*. § 6.03(a). "[A] culpable mental state must generally be inferred from the circumstances." *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). Absent a confession, we must infer a defendant's mental state from his "acts, words[,] and conduct." *Id.*

The phrase "using force against the peace officer" means "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016). Evidence that a person used force to shake off an officer's detaining grip, whether by pushing or pulling, may be enough to sustain a conviction for resisting arrest. *See Clement v. State*, 248 S.W.3d 791, 797–98, 801–02 (Tex. App.—Fort Worth 2008, no pet.) (concluding that the proscribed conduct in section 38.03(a): "prevents" and "obstructs" can both be used to mean "hinder" or "impede" when determining that the defendant, in freeing her wrist from being handcuffed by pulling it away, moving her body away from the officer, and dropping her dead weight to prevent from being pulled towards a patrol car constituted resisting arrest or transportation).

Moreover, under section 38.03, the actions of resisting arrest, resisting search, and resisting transportation all constitute committing a single offense. *McIntosh v.* State, 307 S.W.3d 360, 366 (Tex. App.—San Antonio 2009, pet. ref'd); *see also Clement*, 248 S.W.3d at 802; *Hartis v. State*, 183 S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Finster v. State*, 152 S.W.3d 215, 219 (Tex. App.—Dallas 2004, no pet.). The statute also provides that "[i]t is no defense to prosecution under [section 38.03(a)] that the arrest or search was unlawful." TEX. PENAL CODE ANN. § 38.03(b).

*B. Applicable Facts*

City of Olmos Park's (the "City") current Chief of Police Rene Valenciano and former Officer James Lopez testified regarding Miller's arrest near City Hall. Chief Valenciano and Officer Lopez escorted City employees to their vehicles to a lot across the street and behind the fire station cattycorner to City Hall. Both Chief Valenciano and Officer Lopez wore body cameras that recorded the incident, and the recordings were admitted into evidence and played for the jury. Additionally, another person, who did not testify at trial, recorded the incident and that recording was also admitted into evidence and played for the jury.

These three recordings offered key evidence about the incident in question. Collectively, the videos showed that as the officers and employees finished crossing the street in front of City Hall and began walking down the sidewalk, Miller approached the group with what appeared to be an assault rifle. Chief Valenciano told Miller to go back across the street "with that rifle." Miller did not stop and kept walking towards Chief Valenciano. Chief Valenciano continued to warn Miller to stop approaching. Despite the warnings, Miller told Chief Valenciano that he intended to walk near Chief Valenciano. At that time, Chief Valenciano reached for Miller's left wrist. While telling Chief Valenciano to get away from him, Miller both moved his body away and pulled his arm away from Chief Valenciano. As Chief Valenciano reached for Miller's wrist, he told Miller that he was detaining Miller. During this time, Chief Valenciano can be seen slightly struggling to handcuff Miller, while instructing Miller to place his right arm behind his back. Miller argued with Chief Valenciano claiming he had done nothing and that the rifle was fake. As the struggle continued, Miller began screaming claiming his left shoulder was in pain because of how Chief Valenciano was attempting to handcuff him. Officer Lopez quickly assisted Chief Valenciano. Officer Lopez initially tried to place Miller's arms together so that he could be handcuffed while

Miller continued screaming that he was in pain and that his shoulder was injured prior to the incident. Miller stated he was not trying to resist and then asked the officers to use two handcuffs to secure his arms asking what was wrong with them not using two pairs of handcuffs. Officer Lopez then grabbed a second pair of handcuffs, and Miller was finally handcuffed while laying chest-down, partly on the curb and the street.

Next, as Chief Valenciano walked away from Miller and Officer Lopez to address other onlookers, Officer Lopez attempted to have Miller roll over so that he would be face up. As Officer Lopez tried to instruct Miller how to roll over, Miller continued to scream in pain, claiming he could not follow Officer Lopez's instructions due to his injured shoulder and requested the handcuffs be removed. Miller did not try to turn himself over claiming he could not move, so Officer Lopez rolled him over on his right shoulder. Miller continued screaming. Next Chief Valenciano walked back towards Miller who was sitting on the street with his legs extended in front of him. Miller began asking Chief Valenciano to place his arms in front of him and requesting medical attention. Chief Valenciano then attempted to instruct Miller on standing up so that he could be moved to the police station and examined by medical personnel. However, after Miller continued yelling and appeared unwilling to follow any directions, Chief Valenciano instructed Officer Lopez to assist him with bringing Miller to his feet. Chief Valenciano and Officer Lopez, standing on opposite sides of Miller, brought Miller to his feet, despite Miller's failure to cooperate. As soon as he had footing, Miller, still screaming, hit Officer Lopez in the face with the back of his head. Officer Lopez immediately exclaimed to Chief Valenciano that Miller had headbutted him while they were bringing Miller to his feet. Chief Valenciano and Officer Lopez then began walking Miller towards the police department. Miller continued to complain of pain for several steps until he finally started cooperating and walking with the officers.

Both Chief Valenciano's and Officer Lopez's testimony of the incident corresponded with the video evidence. Chief Valenciano testified he knew Miller from prior interactions but had not previously arrested him. During cross-examination, Chief Valenciano acknowledged that Miller provokes confrontations with law enforcement, including him. Chief Valenciano testified that a couple of days prior to Miller's arrest, he encountered Miller when he escorted the employees to their vehicles in the employee parking lot and observed Miller blocking the parking lot exit with his vehicle. Chief Valenciano reported that he and Miller had a verbal altercation after he told Miller to move his vehicle so the staff could leave.

Just prior to escorting the employees to their vehicles on the day in question, Chief Valencio was made aware that Miller and others were outside near City Hall, and Miller was carrying what appeared to be a firearm. Chief Valenciano stated that he expected to be recorded and expected a confrontation but did not expect an arrest when encountering the protesters outside. According to Chief Valenciano, on the day in question, Miller was standing in the middle of the street and began approaching Chief Valenciano, Officer Lopez, and the employees. As Miller approached, Chief Valenciano ordered Miller to stay on the other side of the street away from him, Officer Lopez, and the employees. Miller did not obey Chief Valenciano's order and kept advancing towards them. At that time, Chief Valenciano decided to temporarily detain Miller for obstruction of a sidewalk, passageway, and disorderly conduct in a manner calculating alarm because he was walking towards them while it appeared he was armed. However, when attempting to detain Miller, he stiffened his arms preventing Chief Valenciano from securing Miller in handcuffs. As soon as Miller began resisting Chief Valenciano's attempt to handcuff him, Chief Valenciano decided to arrest Miller.

While attempting to effectuate the arrest, Chief Valenciano placed Miller in a "pain-compliance hold" on his left hand to arrest him, but Miller continued to resist causing Miller and Chief Valenciano to fall. Chief Valenciano explained Miller continued to stiffen his arms and his body in a way that made it difficult to complete the arrest, requiring the assistance of Officer Lopez and two pairs of handcuffs. Chief Valenciano then testified they had to forcefully stand Miller up from the ground because Miller continued to make his arms stiff and body limp. As they brought Miller to his feet, Chief Valenciano heard a big thump, and Officer Lopez told Chief Valenciano that Miller had headbutted him.

Chief Valenciano recalled Miller complaining about pain to his arm and wanted Miller to be checked by EMS. EMS treated Miller at the jail and took him to the hospital to be treated as well. Miller was not admitted to the hospital, and EMS returned him to the police department later that day without any medical restrictions. Additionally, other recordings of Miller sitting in the police department's holding cell show Miller: sitting with his arms up and behind his head, at times clasped together on top of his head; lying on his left shoulder on the small metal bench; stretching his arms and placing them behind his back in a handcuffed position; and compliantly placing his arms behind his back without complaint when police handcuffed him again. In Chief Valenciano's opinion, the recordings show Miller's shoulder and arms did not have limited movement, and Miller was able to assume the positions requested by Chief Valenciano and Officer Lopez at the time of arrest without experiencing pain.

Officer Lopez testified that when escorting the employees, Chief Valenciano advised Miller to step back from them escorting the employes, but Miller did not comply. Chief Valenciano then detained Miller by grabbing Miller's arm, which led to Chief Valenciano and Miller falling to the ground with Chief Valenciano attempting to hold onto Miller's arm. Officer Lopez testified

he then assisted Chief Valenciano because Chief Valenciano could not effectuate the arrest alone. Officer Lopez explained the sequence of events beginning with Chief Valenciano telling Miller he was being detained and then describing Chief Valenciano's struggle to handcuff Miller. Next, Officer Lopez helped Chief Valenciano place one handcuff on Miller's wrist, who was screaming and complaining of shoulder pain. Officer Lopez eventually used a second pair of handcuffs to alleviate Miller's alleged shoulder pain. Officer Lopez testified that Miller did not cooperate and made it difficult for them to take him into custody. Officer Lopez claimed that Miller used force to stiffen his arms, making it difficult to put his hands together with one pair of handcuffs.

Next, Officer Lopez testified about the effort it took to get Miller off the ground. Both Chief Valenciano and Officer Lopez attempted to explain to Miller different methods they could use to stand Miller up with minimal injury. Despite trying to give Miller these instructions, Miller continued to talk over Officer Lopez and Chief Valenciano. Officer Lopez testified Miller caused his body to be dead weight as Officer Lopez and Chief Valenciano tried to stand Miller on his feet. Officer Lopez then explained that once Miller stood up, he "flay[ed] back and [struck]" Officer Lopez in the face, stating: "[Miller] headbutted me with the rear of his head to my face." Also, while trying to stand Miller up, Officer Lopez stated that Miller was complaining, cursing, and screaming in pain claiming Officer Lopez broke his shoulder. According to Officer Lopez, he believed Miller intentionally used more force than necessary to stand up and headbutted him; however, he also acknowledged Miller could have been reacting to his alleged pain.

Four City employees testified at trial that on the day of the incident, shortly after 5:00 p.m., Chief Valenciano and Officer Lopez escorted them to their vehicles parked in the employee parking lot across the street from City Hall. According to the employees, it was normal for them to be escorted to the parking lot by officers. All the employees provided a similar account of seeing

Miller and others outside City Hall when they exited the building and then Miller approaching the sidewalk they used to walk to their vehicles. Some of the employees testified that Miller was carrying what they believed to be a real gun: this caused them concern. Moreover, most of the employees specifically recalled Chief Valenciano telling Miller to not cross the street towards them, but Miller disobeyed the warning and continued walking towards them. The employees explained they all heard commotion behind them as they continued walking to their vehicles but did not turn around to witness the incident.

### C. Analysis

Here, the jury heard testimony regarding Miller's interaction with the officers from Chief Valenciano and Officer Lopez and was able to view several different recordings of the incident. While several city employees testified about walking to their vehicles, none of them turned around and witnessed the incident.

According to Chief Valenciano, as soon as he told Miller he was going to detain him, Miller began moving his body away and pulling his wrist away from Chief Valenciano's grip. This action caused Chief Valenciano to immediately decide to arrest Miller rather than detain him. Miller's actions of stiffening his arms rather than cooperating with Chief Valenciano caused Miller and Chief Valenciano to fall. Despite Miller's claims that he was not resisting arrest, Chief Valenciano and Officer Lopez both testified that Miller's movement and stiffening of his arms made it difficult to place Miller under arrest, requiring them to use two pairs of handcuffs.

Resisting arrest does not require the actor to outright fight law enforcement. Rather, a factfinder could reasonably infer Miller's actions in pulling his wrist away from Chief Valenciano and stiffening his arms while the officers struggled to handcuff him show Miller's intent to act in

opposition to or hostile towards, i.e., hindering or impeding, the officers from effectuating his arrest. *See Clement*, 248 S.W.3d at 208; *see also Finley v. State*, 484 S.W.3d at 928.

In addition, Miller also argues that his arrest was complete before he allegedly headbutted Officer Lopez. Miller fails to appreciate that the offense for which he was convicted also prohibits a person from intentionally preventing or obstructing a peace officer from effecting transportation. *See* TEX. PENAL CODE ANN. § 38.03(a); *McIntosh v. State*, 307 S.W.3d at 366 (explaining the offense can be committed in three different ways). From the moment Chief Valenciano and Officer Lopez attempted to instruct and assist Miller in standing, Miller used his body as dead weight and failed to cooperate causing Chief Valenciano and Officer Lopez to struggle to lift Miller to his feet. Moreover, once Miller gained some footing, he powered up striking Officer Lopez in the face with his head. Miller did not begin to physically cooperate with the officers until after taking several steps while being walked from the street to the police department. The jury heard testimony that once Miller was inside the police department he expressed that he did not intend to hit Officer Lopez. As the sole judge of the witnesses' credibility and the weight to be given their testimony, the jury could have disbelieved Miller's statement. *See Brooks*, 323 S.W.3d at 899.

Moreover, as mentioned above, "[i]t is no defense to prosecution under [section 38.03(a)] that the arrest or search was unlawful." *See* TEX. PENAL CODE ANN. § 38.03(a), (b). Therefore, Miller's contention at trial and on appeal that he did not commit an arrestable offense does not factor into the analysis about whether the evidence is sufficient to support his conviction for resisting arrest, search, or transportation.

Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded that Miller resisted arrest and transportation. *See id.* § 38.03(a); *see also Jackson*, 443 U.S. at 319. We conclude the evidence is sufficient to support the jury's verdict that

Miller committed the offense of resisting arrest, search, or transportation. *See* TEX. PENAL CODE ANN. § 38.03(a); *Hooper*, 214 S.W.3d at 13.

We overrule Miller's first and second issues.

### CONSTITUTIONALITY OF TEXAS PENAL CODE SECTION 38.03(b)

In his third and final issue, Miller argues Texas Penal Code section 38.03(b), instructing that "[i]t is no defense to prosecution under [section 38.03(a)] that the arrest or search was unlawful," is unconstitutional on its face and as applied to him. *See* TEX. PENAL CODE ANN. § 38.03(a), (b). Miller's brief does not provide a record reference as to where in the record Miller brought this issue to the trial court's attention; and based on our review of the record, we could not locate anywhere in the record that Miller contended section 38.03(b) was unconstitutional on its face or as it is applied to him.

Constitutional challenges must be presented to the trial court, or they are waived on appeal. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) ("'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error."); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (stating facial challenge cannot be raised for the first time on appeal); *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.) ("[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial."); *Sony v. State*, 307 S.W.3d 348, 352–53 (Tex. App.—San Antonio 2009, no pet.) (stating failure to raise facial and as applied challenges to statute's constitutionality in trial court waived complaints on appeal).

Because Miller failed to present his constitutional complaints to the trial court, he has waived them on appeal. *See Reynolds*, 423 S.W.3d at 383; *Karenev*, 281 S.W.3d at 434; *Cooper*, 673 S.W.3d at 749; *Sony*, 307 S.W.3d at 352–53.

We overrule Miller's third issue.

## CONCLUSION

Having overruled Miller's issues on appeal, we affirm the trial court's final judgment of conviction.

Irene Rios, Justice

DO NOT PUBLISH